# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**MARVIN SERNA, JR.**                                                      **PLAINTIFF**

v.                                                                      **1:17CV360-LG-RHW**

**GCSG HOLDINGS, LLC; GULF COAST SHIPYARD GROUP, INC.; and JOHN DOES 1-5**            **DEFENDANTS**

## ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

BEFORE THE COURT are cross-motions for summary judgment filed by the parties in this breach of employment contract case. Additionally, Plaintiff Serna has filed two motions to strike certain documents attached as exhibits to Defendant GCSG Holdings, LLC's summary judgment motion. Each motion has been fully briefed. The Court concludes that Defendant GCSG Holdings, LLC terminated Serna without "Good Cause" as defined in the employment contract because it did not provide written notice. In reaching this conclusion, it was not necessary to consider most of the evidence objected to by Serna in his motions to strike. However, the Court did refer to the affidavit of Dina Galiano in examining the issue of unpaid vacation pay. Serna's objections to Galiano's affidavit have been considered and rejected. Accordingly, Serna's [108] Motion for Summary Judgment will be granted in part and denied in part, and his [117, 123] Motions to Strike will be denied. Defendant GCSG Holdings, LLC's [110] Motion for Summary Judgment will be denied.

BACKGROUND

This case was removed from state court on the basis of diversity jurisdiction.[1] Plaintiff Serna entered into a contract with GCSG Holdings, LLC ("GCSG") to provide services as Gulf Coast Shipyard Group, Inc's Chief Operating Officer. However, the contract was terminated early for reasons that GCSG contends constituted good cause, thereby relieving it from any further obligation to Serna. Serna objects to that characterization and seeks the severance package for early termination without cause promised in the contract. His claims are for breach of contract, breach of duty of good faith and fair dealing, and bad faith breach of contract. The parties agree that Louisiana law applies to these claims because of the contract's choice of law provision.

GCSG's grounds for summary judgment are that it terminated Serna for good cause, and so Serna was not entitled to severance or benefits. GCSG argues that because Serna was terminated for "good cause," it did not breach the employment contract or its duty of good faith and fair dealing, or act in bad faith.

Serna argues the opposite – that he was not terminated with "good cause." He contends 1) he was not given the written notice required; and 2) there is no evidence he had any performance issues before termination. Additionally, Serna

---

[1] Earlier, the Court denied Plaintiff's motion to remand, finding that the non-diverse Defendant Gulf Coast Shipyard Group, Inc. had been improperly joined. (*See* Mem. Op. & Order Denying Mot. to Remand, ECF No. 15.)

argues that he has not been paid for accrued vacation time, even though GCSG agreed he was owed this benefit at the time of termination.

DISCUSSION

1. **Breach of Contract**

> In Louisiana, a breach-of-contract claim has three essential elements: (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee. The first two elements of a breach-of-contract claim, obligation and breach, involve issues of both contractual interpretation as a matter of law, as well as questions of fact regarding whether the actions of the parties actually constituted the alleged breach under the applicable contractual terms. The third element, damages, is a question of fact.

*IberiaBank v. Broussard*, 907 F.3d 826, 835 (5th Cir. 2018) (citations and internal marks omitted). The burden of proof in an action for breach of contract is on the party claiming rights under the contract. *Green Acres Landscape & Maintenance, LLC v. Nottoway Plantation, Inc.*, 2018-0825, p.4 (La. App. 1 Cir. 1/9/19); 2019 WL 13981, at *2.

"Interpretation of the contract will often be necessary to determine whether there has been a breach." *Tabor v. Madison Par. Hosp. Serv. Dist.*, No. CV 14-2374, 2017 WL 2569525, at *5 (W.D. La. June 13, 2017). "The goal of contract interpretation is to discover the common intent of the parties." *Id.* (citing La. Civ. Code art. 2045). The contract language is the starting point for determining common intent. *Id.* (citing *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009)). "The words of a contract must be given their generally prevailing meaning." *Id.* (citing La. Civ. Code art. 2047). "When the

- 3 -

words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *Id*. (citing La. Civ. Code art. 2048).

The parties' contract provides that termination for good cause "will relieve the Company of any further liability for payment of salary, commissions and/or bonuses under this Agreement save that which was earned prior to the date of the termination." (Def. Mot. Ex. A, at 4, ECF No. 108-1.) The provision at the center of the parties' dispute begins with the sentence "This Agreement may be terminated by the Company at any time for good cause." The next sentence defines good cause:

> "Good Cause" is defined herein as:
> (1) If Employee should breach any of the provisions of this Agreement, then immediately upon written notice from the Company.
> (2) If Employee shall have engaged in misconduct of such nature as to render his continued association with the Company as detrimental to the Company in its discretion, then immediately upon written notice from the Company.

(Def. Mot. Ex. A, at 4, ECF No. 108-1.) The contract further provides that "[i]f Employee is involuntarily terminated by the Company without a showing of 'Good Cause' as has been defined herein . . . Employee shall be entitled to a 'Severance Package' . . . ." (*Id.* at 5.)

The plain language of the contract requires both an action by the employee – breaching the Agreement or engaging in misconduct – and an action by the employer -- "written notice from the Company" -- for good cause to come into

- 4 -

existence.[2] As CGSG notes, this is not the usual understanding of the term "good cause." However, the words of the contract are clear, unambiguous, and do not lead to absurd consequences. Louisiana law counsels that in these circumstances, "the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties." *Green Acres*, 2018-0825, p. 4-5; 2019 WL 139381, at *2.

Turning to application of the contract language to the facts, Serna argues there is no evidence that he was guilty of misconduct or that CGSG provided written notice, while GCSG argues there is evidence of both. The Court finds no evidence in the record of GCSG providing the required written notice, making consideration of Serna's alleged misconduct unnecessary.

The CEO of GCSG testified that on the day Serna was terminated, Serna called him to tell him he was refusing to sign the notice of termination form that "they" brought him. (GCSG Mot. Ex. T, at 42-43, ECF No. 110-20.) A vice-president and a security officer were apparently the personnel Serna referred to in the phone call. (GCSG Mot. Ex. C, at 2, ECF No. 110-3.) Autin, the vice-president in question, testified he went to the shipyard on April 12 to terminate Serna. He was alone with Serna during the termination meeting, and he did not give Serna

---

[2] The Louisiana Supreme Court appears inclined to fully enforce notice provisions in employment contracts. *See, e.g., Baldwin v. Bd. of Sup'rs for Univ. of La. Sys.*, 2014-0827, p.8 (La. 10/15/14); 156 So. 3d 33, 39.

anything in writing "at that minute." (Serna Mot. Ex. 4, at 50, ECF No. 108-4.) He testified that he did not give the Change of Status Form to Serna to sign because "[h]e says he's not signing anything. You know, I'm not going to – I'm not going to cause a skirmish over it." But Autin also testified that he did not have the Change of Status form with him, and he did not know if Serna was ever given the form. (*Id.* at 52, 75.) As the form is the only written termination notice CGSG alleges was given to Serna, the Court concludes that there is no evidence that Serna received written notice at the time he was terminated. Serna's reported protestations that he "would not sign anything" could only raise an inference that he had been given the Change of Status form if Autin had presented it to him. But because Autin testified he did not even have the form with him, he could not have given it to Serna, and Serna could not have been referring specifically to it.

For these reasons, the Court finds that a jury would have no evidence from which they could conclude that "good cause" for Serna's termination, as defined in the contract, existed. "When parties are bound by a valid contract and material facts are not in conflict, the contract's application to the case is a matter of law and summary judgment would be appropriate." *Sartisky v. La. Endowment for the Humanities*, No. CV 14-1125, 2015 WL 7777979, at *2 (E.D. La. Dec. 2, 2015) (citations omitted). Summary judgment in favor of Serna on the primary question in this case is appropriate. Serna is owed the severance package described in the contract, because he had been "involuntarily terminated by the Company without a showing of 'Good Cause' as" defined. (Def. Mot. Ex. A, at 5, ECF No. 108-1.)

## 2. Accrued, Unpaid Vacation Days

Next, the parties dispute whether Serna is entitled to payment for accrued vacation time.³ Serna points to the Change of Status form for his contention that he is owed for sixteen days of accrued vacation pay, valued at $24,615.36. At the bottom of the form is a handwritten notation: "Pay 16 days of vacation." (Def. Mot. Ex. S, ECF No. 110-19.) Serna states he has not received this pay, and neither the CEO nor Autin could testify that GCSG had paid it.

GCSG, on the other hand, contends that its records show Serna had no accrued, unpaid vacation time when he was terminated. Some of the records were provided under the affidavit of Dina Galiano, GCSG's accounting manager, and others were simply summarized in her affidavit. (Def. Mot. Ex. H, ECF No. 110-8.) She states that in her role as accounting manager, she oversees payroll and "was responsible for, in part, determining the amount of unpaid vacation time documented for Plaintiff upon termination." (*Id.* at 1.)

Serna objects to the Court's consideration of Galiano's affidavit, primarily contending that the company's records Galiano refers to are unauthenticated and therefore inadmissible. However, Rule 56 requires only that an affidavit "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Authentication of records or documents underlying an affidavit is

---

³ Serna alleged in his Complaint that "Defendants further failed to tender payment of Guaranteed Benefits and Vacation resulting in a breach of contract." (Compl. 3, ECF No. 1-2.)

not required by the Rule.  The facts testified to by Galiano are contained in GCSC's business records and would certainly be admissible through her testimony as the accounting manager who "oversees payroll" and was involved in the vacation time decision at issue here.  *See Crear v. Select Portfolio Serv. Inc.*, No. 18-10860, 2019 WL 316758, at *2-3 n.1 & n.2 (5th Cir. Jan. 22, 2019).  Accordingly, Serna's objection to consideration of Galiano's affidavit is overruled.

The employment contract states that Serna "shall receive three (3) weeks paid vacation per year from the commencement of his employment.  Upon completion of one year of employment, his paid vacation shall increase to five (5) weeks paid vacation per year." (Def. Mot Ex. A, at 2, ECF No. 108-1.)  Although the contract expressly provides for payment of earned salary and bonuses in the event of a "good cause" termination, the contract is silent about payment of earned salary and bonuses in the event of an involuntary termination without "good cause." (*See id.* at 4, 5.)

Serna argues that the contract entitles him to payment for vacation days accrued but unused during 2017 by operation of Louisiana statute.  "The Louisiana Wage Payment Act imposes a duty on an employer, upon discharge of an employee, 'to pay the amount then due under the terms of employment . . . on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.'" *Gartman v. Hous. Auth. of Jefferson Par.*, No. CV 17-12375, 2018 WL 4503941, at *8 (E.D. La. Sept. 20, 2018) (quoting La. R.S. § 23:631(A)(1)(a)).  Penalties and attorneys' fees are available for a successful claim of

unpaid wages. *Id.* at *9. Accrued, unused vacation time constitutes wages under the statute. *Id.*

The Court finds a question of material fact regarding whether Serna had accrued unused vacation days at the time of his termination. Serna testified that he did not have an independent recollection of the vacation days he had taken in 2017. (Serna Dep. 108-11, ECF No. 108-2.) GCSG's logs indicated that Serna had sixteen days of accrued unused vacation time when he was terminated. (Autin Dep. 94, ECF No. 108-4.) As noted above, there is an instruction on the Change of Status form to pay Serna for sixteen vacation days. However, Galiano stated that her review of the company's logs and records showed Serna had no unused vacation time. (Def. Mot. Ex. H, at 2, ECF No. 110-8.) This conclusion arose from her review of attendance logs showing that Serna was absent from the shipyard for more than the sixteen days of accrued vacation time.

Serna testified that when he was absent from the shipyard he was either working from another location, or he had obtained verbal permission from the CEO to take the time off. (Serna Dep. 109-11, ECF No. 108-2.) The CEO agreed that "[w]hen [Serna] wanted to take off he would call me. I would approve it and/or he could – he might of texted me, emailed. I can't recall all of the ways he did it." (Def. Mot. Ex. T, at 124, ECF No. 110-20.)

The vacation pay portion of Louisiana's Wage Payment Act provides that

> (1) For purposes of this Section, vacation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of the following apply:

- 9 -

(a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.

(b) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.

La. R.S. § 23:631(D).

It is the Court's view that a jury must resolve whether Serna had vacation pay due, and if so, the amount. There is no dispute that Serna accrued the right to take vacation time with pay, but there is a question regarding whether Serna had taken the vacation time. *See, e.g, Knight v. Tucker*, 2016-50993, p. 17-18 (La. App. 2 Cir. 11/16/16); 210 So. 3d 407, 418. From the evidence provided it would be possible to conclude that Serna had used all of his 2017 vacation time prior to his termination, as testified to by Galiano; or he had used none of the sixteen days of accrued vacation time while he was absent from the shipyard as he testified; or that some of the time he was absent (but excused) was vacation time. Accordingly, summary judgment on Serna's claim for vacation pay and any associated statutory penalty and attorneys' fees will be denied.

## CONCLUSION

The Court has considered all arguments. Those not specifically addressed would not change the outcome.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [108] Motion for Summary Judgment filed by Plaintiff Serna is **GRANTED IN PART AND DENIED IN PART** as set out above.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [117, 123] Motions to Strike filed by Plaintiff Serna are **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [110] Motion for Summary Judgment filed by Defendant GCSG Holdings, LLC is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 8th day of February, 2019.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE